UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOSEPH VAN LEUVEN
    Plaintiff,

v.

BJORN NIELSEN
    Defendant.

No. 3:18-cv-1007 (MPS)

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ON MOTION TO DISMISS**

Plaintiff Joseph Van Leuven ("Van Leuven") brought this suit against Defendant Bjorn Nielsen ("Nielsen"), alleging that Nielsen initiated malicious and vexatious litigation against him in a prior lawsuit. Nielsen moved to dismiss Van Leuven's complaint for improper service and lack of personal jurisdiction. (ECF No. 13.) Because the parties submitted papers related to the motion that raised factual disputes, the Court held an evidentiary hearing on the motion on January 22, 2019. At the hearing, Van Leuven presented a single witness—a private investigator—and introduced two exhibits. Nielsen called no witnesses and presented no exhibits. This memorandum sets forth my factual findings and legal conclusions following the hearing, as a result of which I DENY Nielsen's motion to dismiss.

**I.**     **Introduction**

Van Leuven filed this suit against Nielsen on June 13, 2018. (ECF No. 1.) On June 22, 2018, Van Leuven filed a proof of service form completed by John Corelli, a state marshal. (ECF No. 10.) The form indicated that on June 19, 2018, Corelli left the summons at Nielsen's residence or usual place of abode, noted as 172B Milbank Avenue in Greenwich, Connecticut, with an individual named Carol Gellos ("Gellos"). (ECF Nos. 10, 10-1.) Nielsen moved to dismiss the complaint for lack of service, arguing that Gellos, and not Nielsen, lived at 172B Milbank Avenue at the time of service, and attaching affidavits from both Nielsen and Gellos contesting service.

1

(ECF Nos. 13-1 at 2–3, 13-2, 13-3.) Following Van Leuven's opposition, which included opposing affidavits and public records (ECF Nos. 14, 14-1, 14-2, 14-3, 14-4), and Nielsen's reply brief and declaration (ECF No. 15, 15-1), I ordered that an evidentiary hearing be held on "both the propriety of 'abode' service and the existence of diversity jurisdiction," which I found "turn[ed] on disputed issues of fact." (ECF No. 16.)

## II. Findings of Fact

At the evidentiary hearing, Van Leuven elicited testimony from Michael Hunter ("Hunter"), a licensed private investigator who was hired by Van Leuven's counsel to investigate Nielsen's whereabouts. Van Leuven also successfully moved into evidence two exhibits: (1) a State of Connecticut, Department of Motor Vehicles driving history as of 12/31/2018 showing a Connecticut operator's license for Bjorn Nielsen; and (2) a notarized letter attaching several documents, including Mr. Nielsen's voter registration card with the Town of Greenwich. Nielsen did not elicit any testimony or offer any exhibits, but simply cross-examined Mr. Hunter. Based on the foregoing evidence, I make the following findings of fact:

1. Hunter was hired by Van Leuven's counsel to locate Nielsen. Hunter obtained Nielsen's cell phone number from a LexisNexis search.

2. 172 Milbank Avenue is a building two to three stories high. The front of the building has a door for apartment "A," and down the driveway on the right side of the building is a door for apartment "B." Each apartment is a one-family residence.

3. Soon after running the background check on Nielsen but before June 11, 2018, Hunter visited 172 Milbank Avenue and knocked on the door for both apartments. Only the tenant for 172A Milbank Avenue opened the door. Nobody answered the door to 172B Milbank Avenue during that visit.

4. On or about June 11, 2018, Hunter called the cell phone number he obtained from LexisNexis on two occasions. On both calls, Hunter reached someone who identified himself as Nielsen, and who I conclude was in fact Nielsen.

5. On the first call, Hunter told Nielsen that Hunter was trying to deliver a package to Nielsen. Hunter may have also said that Hunter worked for a package delivery company. Hunter did not tell Nielsen what the contents of the package was. Nielsen responded that he was out of the country at the time, but that Hunter could leave the

package at his residence. Nielsen said that his residence was 172 Milbank Avenue in Greenwich. Nielsen also said that 172 Milbank Avenue was his "home" and that he owned the property.

6. Following the first call, Hunter went to 172B Milbank Avenue and again called Nielsen.

7. On the second call, Nielsen told Hunter to go ahead and deliver the package to 172B Milbank Avenue.

8. Hunter knocked on the door for 172B Millbank Avenue, and a Caucasian woman answered the door. Hunter did not ask for her name, and she appeared to be alone.

9. Nielsen did not answer the door to 172A or 172B Milbank Avenue during either of Hunter's visits.

10. Hunter did not serve the summons or the complaint, and he did not have a copy of the summons or the complaint on his person during either visit to 172 Milbank Avenue.

11. The State of Connecticut Department of Motor Vehicles issued a driving record for Nielsen showing no violations on record as of December 31, 2018. Nielsen's license number begins with "CT," indicating that he held a Connecticut Driver's license as of December 31, 2018. The driving record also notes a "CDLIS Inquiry" on July 14, 2017.

12. The Town of Greenwich, Connecticut voter registration records reflect that Nielsen's voter registration card lists "172 Milbank Ave West" in Greenwich as the "[a]ddress [w]here [he] [l]ive[s]." The card appears to be electronically signed and dated July 14, 2017. I find that this exhibit shows that, when registering for a Connecticut license on July 14, 2017, Nielsen submitted a voter registration form that listed 172 Milbank Avenue as the address at which he lived.

### III. Legal Standard

Nielsen moves to dismiss for improper service under Fed. R. Civ. P. 12(b)(5). "A motion to dismiss pursuant to Rule 12(b)(5) must be granted if the plaintiff fails to serve a copy of the summons and complaint on the defendants pursuant to Rule 4 of the Federal Rules." *Sanchez v. Homestead Funding Corp.*, No. 3:13-CV-01850 MPS, 2015 WL 4487983, at *1 (D. Conn. July 23, 2015) (citation omitted). "[A] district court has considerable procedural leeway in deciding the motion." *Id.* (citing *Perez v. Connecticut Dep't of Correction Parole Div.*, No. 3:13–CV–150 JCH, 2013 WL 4760955, at *2 (D. Conn. Sept. 4, 2013)). The Court "may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." *Perez*, 2013 WL 4760955, at *2 (citing

*Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)). Where the Court chooses to hold an evidentiary hearing, "the plaintiff must establish [proper service] by a preponderance of the evidence." *Marine Midland Bank, N.A.*, 664 F.2d at 904.

IV.    **Conclusions of Law**

Nielsen argues that Van Leuven failed to properly serve him in accordance with Fed. R. Civ. P. 4(e) either by serving his authorized agent or by serving him at his "usual place of abode." (ECF No. 15 at 1–3.) Because I find Van Leuven has shown by a preponderance of the evidence that 172B Milbank Avenue was one of Nielsen's "abode[s]," I conclude that Van Leuven properly served Nielsen under Rule 4(e)(2)(B).[1]

Under Rule 4(e)(2)(B), "an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by . . . leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e)(2)(B).[2] "Although the terms

---

[1] Nielsen previously submitted two affidavits that, in addition to challenging certain statements in Hunter's affidavit, stated that Nielsen had moved to New York. (ECF Nos. 13-3, 15-1.) This in turn prompted the Court to *sua sponte* raise a potential issue with its diversity jurisdiction. (ECF No. 16.) The Court now disregards these affidavits, however, because they constitute hearsay and because Nielsen's decision not to appear at the hearing and not to call any witnesses or evidence raises questions as to the credibility of the affidavits; that is, I do not credit the statement in Nielsen's affidavit that he changed his domicile to New York before this action was filed, because it would have been a simple matter for him to attend the hearing and so testify, which he chose not to do. It is worth noting that, because van Leuven made a *prima facie* showing that Nielsen's domicile was in Connecticut in his initial filings, it was Nielsen's burden to show a change of domicile. *See Gutierrez v. Fox*, 141 F.3d 425, 427 (2d Cir. 1998) (observing in the context of a challenge to the threshold jurisdictional allegations in the complaint that "the person alleging a change of domicile has the burden of proving it."). I find that he failed to carry that burden.

[2] The parties did not argue, either in their briefs or at the evidentiary hearing, that 172B Milbank Avenue was Nielsen's "dwelling." (*See, e.g.*, ECF No. 14 at 2 ("Whether the defendant does or does nor 'reside' at 172B Millbank Avenue is irrelevant . . .").) The parties also do not dispute that Gellos, with whom the complaint and summons were left, was "someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e)(2)(B); *see* 4A Wright & Miller, Fed.

'dwelling' and 'usual place of abode' 'have eluded any hard and fast definition,' [the Court of Appeals] ha[s] recognized that a person can have two or more dwelling houses or usual places of abode, provided each contains sufficient indicia of permanence." *Khan v. Khan*, 360 F. App'x 202, 203 (2d Cir. 2010) (citation and internal quotations marks omitted). The Second Circuit has found that indicia of permanence may include a defendant's ownership of a residence, listing its address on forms, responding to mail sent there, and representations about whether defendant resided there. *See United States v. Mellon*, 719 F. App'x 74, 77 (2d Cir. 2018) (finding sufficient indicia of permanence where defendant "has owned the apartment for many years," "listed the Fifth Avenue address as his residence on a power of attorney form and a bank account agreement," "responded to mail sent by the IRS to the Fifth Avenue address," "made public representations about residing in the Fifth Avenue apartment," "his wife resides in the apartment," and "the doorman at the apartment represented that [defendant] resides in the apartment."). Nonetheless, the term "usual place of abode" does not simply mean "the last place of abode; for a party may change his place of abode every month in the year." *Earle v. McVeigh*, 91 U.S. 503, 508 (1875).[3]

Van Leuven has proven several indicia of permanence by a preponderance of the evidence. First, Hunter testified that Nielsen told him that he owned 172B Milbank Avenue and that the property was his "home" and "residence." Second, Nielsen listed 172 Milbank Avenue as his

---

Prac. & Proc. Civ. § 1096 (4th ed.) ("The requirement that the recipient of the summons and complaint be someone 'who resides there' has long been held to mean that the recipient must be actually living in the same place as the defendant who is to be served.").

[3] I do not agree with Van Leuven's argument that "[a]ll that is required to be an 'abode' is that it be a place with which the defendant is sufficiently connected that he is likely to receive notice of the suit if it is left there," as it elides any distinction between an "abode" and other locations that, while sufficiently connected to a defendant, do not meet the textual requirements of the rule (for instance, an office). (ECF No. 14 at 3–4.) More accurately stated, due process requires that a qualifying "abode" under Fed. R. Civ. P. 4(e)(2) "contain[] sufficient indicia of permanence" because such "indicia give confidence that the person served will receive notice." *Mellon*, 719 F. App'x at 76–77 (citation omitted).

address on his voter registration card that he submitted on July 14, 2017. And third and finally, Nielsen has a current Connecticut driver's license as of December 31, 2018, which undercuts the notion that he permanently moved to New York. I find that this evidence outweighs other evidence at the hearing suggesting that 172B Millbank Avenue was not Nielsen's abode.

This is not a case where Van Leuven has shown only that Nielsen lived at 172B Milbank Avenue for a short time before moving on elsewhere. *See Khan*, 360 F. App'x at 204 (finding no indicia of permanence where defendant "stayed at the house for less than a month before moving into a permanent residence prior to the attempted service, without any demonstrated intent to return," and plaintiff "demonstrat[ed] only that the address had at one time been listed for [defendant] in the California court system."). Rather, Nielsen's own statements to Hunter and contemporaneous, public documents listing a Connecticut residence—including a record for a Connecticut driver's license current as of December 31, 2018—reflect that Nielsen still maintains some permanent connection to 172B Milbank Avenue. *See Nat'l Dev. Co. v. Triad Holding Corp.*, 930 F.2d 253, 258 (2d Cir. 1991) (finding sufficient indicia of permanence where defendant was "actually living in the Olympic Tower apartment on [the date of service]," as evidenced by a housekeeper's testimony, and defendant subsequently "listed the Olympic Tower apartment as one of his residences in a bail application submitted" three years later).[4] Accordingly, based on these indicia of permanence, I find that Van Leuven has met his burden to show by a preponderance of evidence that 172B Milbank Avenue was one of Nielsen's "abode[s]" under Rule 4(e)(2)(B). *See*

---

[4] Although the Second Circuit in that case "express[ed] no opinion upon the validity of service had [defendant] not been actually living at the Olympic Tower apartment when service was effected," *Nat'l Dev. Co.*, 930 F.2d at 258, this case does not present these circumstances because Nielsen, though he may not have been physically present at the time of service, still told Hunter that 172B Milbank Avenue was his home and residence.

6

*Mellon*, 719 F. App'x 74 at 77 (affirming district court's reliance on similar indicia of permanence).

Accordingly, because Van Leuven ultimately left a copy of the complaint and summons with Gellos at 172B Milbank Avenue, Nielsen was properly served under Rule 4(e)(2)(B). Accordingly, I DENY Nielsen's motion to dismiss for improper service.

**V.     Conclusion**

For the foregoing reasons, Nielsen's motion to dismiss the complaint under Fed. R. Civ. P. 12(b)(5) is DENIED. (ECF No. 13.) The parties are directed to file a Rule 26(f) report within 14 days of this order.

IT IS SO ORDERED.

   /s/
Michael P. Shea, U.S.D.J.

Dated:     Hartford, Connecticut
           January 25, 2019